241 N.J. Super. 353 (1990)
575 A.2d 35
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
BERNARD HUTCHINS, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted March 6, 1990.
Decided May 24, 1990.
*354 Before Judges MICHELS, DEIGHAN and R.S. COHEN.
Thomas S. Smith, Jr., Acting Public Defender, attorney for appellant (Stephen W. Kirsch, Assistant Deputy Public Defender, of Counsel, on the letter brief).
Robert J. Del Tufo, Attorney General, attorney for respondent (Catherine Michael, Deputy Attorney General, of Counsel, on the letter brief).
The opinion of the court was delivered by DEIGHAN, J.A.D.
*355 Defendant was convicted by a jury of first-degree armed robbery, contrary to N.J.S.A. 2C:15-1 (Count One); third-degree possession of a handgun without a permit, contrary to N.J.S.A. 2C:39-5b (Count Two), and second-degree possession of a firearm for an unlawful purpose, contrary to N.J.S.A. 2C:39-4a (Count Three). The trial judge merged Count Two into Count Three and sentenced defendant on the first count to a term of 15 years with five years parole ineligibility and to a concurrent seven-year term with three years parole ineligibility on Count Three. A $60 Violent Crimes Compensation Board penalty was also imposed.
The following facts were developed at trial. On May 1, 1986, at approximately 2:45 p.m., Camille Williams and her sister Denise Shannon were walking down Seventeenth Street by West Side Park in Newark. Williams and Shannon were returning to Williams' home from a check-cashing establishment located on Springfield Avenue. Having cashed a Social Security check and obtaining her mother's food stamps, Williams was carrying approximately $271 in cash and $250 worth of food stamps. Additionally, Ms. Williams was also carrying over $100 in cash from her work as a hair stylist.
As the sisters were walking along Seventeenth Street, a man, later identified as defendant, wearing a black jogging suit with "turbo boost" on one shoulder of the top, approached them and asked Williams if she had a cigarette. After Williams replied "no," defendant continued walking. Defendant then pushed Shannon away and shoved Williams up against a chain link fence. He took from his waist a silver handgun with black taping around the handle, aimed it at Williams' neck and told her to "give it up." Ms. Williams put her hands in the air. Defendant searched her clothing, and removed her identification, all of the cash, and her mother's food stamps. He told Williams to run but when she refused, defendant ran away. Williams then telephoned police.
*356 The next day, Williams and her sister went to the police station to look at an array of photographs of possible perpetrators. After looking through approximately ten books of mug shots, Williams identified defendant as the robber. After Williams had picked out defendant's photo, she showed that page of photos to her sister who also picked out defendant's photo.
Defendant then testified on his own behalf. He denied any knowledge of the robbery in question. He claimed that he did not rob Williams and that he never saw her before. During defendant's cross-examination, the trial judge allowed, over objection, questioning regarding defendant's 1986 arrest for possession of a handgun and permitted a rebuttal witness to testify concerning the prior arrest for purposes of affecting Hutchins' credibility.
While cross-examining defendant, after inquiring about both the defendant's prior CDS conviction and the date of the arrest in the instant case, the assistant prosecutor asked defendant,
Q. Tell me, do you know anything about guns?
A. No, never had one, no.
Q. You never had a gun?
A. No.
The assistant prosecutor then asked:
Q. February 1986, you weren't arrested with a .38 caliber gun?
Defense counsel immediately objected to this question.
At a sidebar conference with the trial judge, the State represented that it was prepared to call one of the detectives involved in arresting defendant in February 1986 to show under Evid.R. 55 defendant's knowledge of handguns to counter defendant's denial of knowledge or prior possession. The trial judge rejected the offer under that rule and commented, "I don't think it has relevance to his knowledge and intent."
The trial judge denied defendant's motion for a mistrial and held that both the prosecutor's questions were proper and that the arresting officer could testify as a rebuttal witness for *357 "credibility purposes only."[1] Later, the trial judge clarified his ruling:
So my ruling is clear, the State has a rebuttal witness to affect the credibility of the witness only, [sic] only the credibility of the witness will be allowed to offer [sic] testimony that you were in possession of a gun on February 8, 1988, to the limited testimony of Detective Gold.
The next day, at the conclusion of the defendant's case, the State called Detective James Gold as a rebuttal witness over defendant's continuing objection. Gold testified to the details of the February 1986 arrest, specifically that, while attempting to locate and arrest defendant's brother, Gold and other officers encountered defendant whom they mistook for his brother. Gold stated that defendant began to pull a .38 caliber handgun out of his coat pocket when confronted, whereupon defendant was knocked down, beaten and subdued.
Between direct and cross-examination of Gold, the trial judge instructed the jury:
[T]his evidence is rebuttal evidence and it's being offered in rebuttal to the defendant's testimony about not having a gun on a date some three months prior to this incident. This evidence is not to be used by you in any way whatsoever as substantive proof of the commission of the offense in this crime. It's merely offered for a very limited purpose as to whether or not it effects (sic) the credibility of the defendant's testimony. [Emphasis added]
Also, in his final charge to the jury he stated,
[T]he State has offered rebuttal testimony as to a prior arrest dealing with a gun. This also may only be used to effect (sic) a defendant's credibility. The defendant stated during his testimony that he was not aware of a gun and in fact he did not have a gun on a prior occasion. So the State in its rebuttal testimony offered this prior arrest some three months prior. But I specifically instruct you that this is not proof, substantive proof of the crime charged here. It's only allowed to be considered by you as to whether or not it effects (sic) the defendant's credibility as to his testimony. [Emphasis added]
On appeal defendant raises the following issue:
I The State made an irrelevant unduly prejudicial inquiry into defendant's familiarity with guns (not raised below), and the court erred in allowing the *358 State to ask defendant about his arrest for possession of a handgun and, to introduce extrinsic evidence regarding that arrest to affect defendant's credibility in direct violation of Evidence Rules 22(d) and 47.
Essentially, defendant asserts that there were three separate errors committed by the trial judge with regard to this line of evidence and questioning. First he contends the question "Tell me, do you know anything about guns?" was irrelevant under Evidence Rule 7(f) and alternatively, so unduly prejudicial under Evidence Rule 4 that it outweighed any probative value which it might otherwise have had. Secondly, he submits the court improperly allowed the State to question defendant regarding his prior arrest in order to affect his credibility when only convictions, not arrests, may be used to impeach a witness. State v. McBride, 213 N.J. Super. 255, 267, 517 A.2d 152 (App. Div. 1986); State v. Landeros, 20 N.J. 69, 72, 118 A.2d 521 (1956); State v. Arnwine, 67 N.J. Super. 483, 486, 171 A.2d 124 (App.Div. 1961). Finally, he maintains the judge erroneously allowed a rebuttal witness to testify to the details of the defendant's prior arrest in order to affect defendant's credibility, in direct violation of Evidence Rule 22(d) and 47.
We reverse.

I
"Relevant evidence" is evidence having any tendency in reason to prove a material fact. Evid.R. 1(2). All relevant evidence is admissible. Evid.R. 7(f). Conversely, irrelevant evidence is inadmissible. Relevancy is tested by the probative value the evidence has with respect to the points at issue. Manieri v. Volkswagenwerk A.G., 151 N.J. Super. 422, 429, 376 A.2d 1317 (App.Div. 1977), certif. den. 75 N.J. 594, 384 A.2d 824 (1978). The true test is the logical connection between the proffered evidence and a fact in issue, i.e., whether the thing sought to be established is more logical with the evidence than without it. Id. 151 N.J. Super. at 429-430, 376 A.2d 1317; accord, State v. Coruzzi, 189 N.J. Super. 273, 302, 460 A.2d 120 (App.Div.), certif. den., 94 N.J. 531, 468 A.2d 185 (1983).
*359 The rule speaks in term of a "material" fact which is logically probative evidence. This reflects the concept that relevancy is really composed of two parts: probative value and materiality. Biunno, Current N.J. Rules of Evidence, comment 2, Evid.R. 1(2) at 4-5 (Anno. 1990). Probative value concerns the tendency of evidence to establish the proposition that it is offered to prove. State v. Allison, 208 N.J. Super. 9, 17, 504 A.2d 1184 (App.Div. 1985); McCormick, Evidence (3 ed. 1984), § 185 at 541. Materiality concerns the relation between the propositions for which the evidence is offered and the issues in the case. State v. Allison, 208 N.J. Super. 9, 17, 504 A.2d 1184 (App.Div.), certif. den., 102 N.J. 370, 508 A.2d 235 (1985); McCormick, Evidence, § 185 at 541 (3d ed. 1984). A material fact is one which is really in issue in the case. Biunno, supra, Comment 2, Evid.R. 1(2) at 5.
It is difficult to understand precisely what the State had in mind in asking defendant whether he "knew anything about guns?" Everyone knows something about guns; they know they are dangerous, that they can kill, that there are several kinds of guns, i.e., handguns, shotguns, rifles or BB guns and sundry other guns. The question asked by the assistant prosecutor had absolutely no relevancy to the facts or the issue, i.e., whether defendant robbed the victim at gun point on May 1, 1986, which defendant denied. It is a question which should have never been asked and never answered because it had no logical relationship to the facts of the case.
The last question concerning defendant's arrest was even more egregious. It is obvious that the assistant prosecutor knew that the answer to the first question was false and the second question concerning defendant's arrest was beyond the limits of propriety.
While the State may prove a prior conviction to affect the credibility of a witness, N.J.S.A. 2A:81-12, State v. Sands, 76 N.J. 127, 386 A.2d 378 (1978), it can only do so if there was, in fact, such a conviction. Inquiry concerning an arrest, or any *360 reference to simply an arrest, is prohibited. State v. Cooper, 10 N.J. 532, 555-556, 92 A.2d 786 (1952). State v. Searles, 82 N.J. Super. 210, 215, 197 A.2d 384 (App.Div. 1964). The Searles court makes it clear that where defendant's case rests upon his credibility, admission of testimony or the posing of questions concerning defendant's prior arrest, constitutes plain error and requires reversal of the conviction, and a new trial. Id.; see also State v. Dunphy, 19 N.J. 531, 537, 117 A.2d 617 (1955).

II
Generally, a witness may not be impeached by producing extrinsic evidence to contradict another witness' assertion about collateral facts. McCormick, supra, § 47 at 110. If the collateral fact sought to be contradicted is elicited on cross-examination, this safeguarding rule is often expressed by saying that the answer is conclusive or that the cross-examiner must "take the answer." Ibid.
To determine the collateral fact, the classical approach is that the facts which would have been independently provable regardless of the contradiction are not "collateral." Ibid. Here, the question concerning previous knowledge and possession of guns could not in any way have been introduced independently because it was irrelevant and thus collateral. As stated in 3A Wigmore, Evidence (Chadbourn Rev. 1970) § 1003 at 961: "Could the fact, as to which error is predicated, have been shown in evidence for any purpose independently of the contradiction?"
Two general kinds of facts meet this collateral test and are not collateral. The first are facts that are relevant to the substantive issues in the case. McCormick, supra, § 47 at 110-11; 3A Wigmore, supra, § 1004 at 965 ("the issues in the case indicate what facts would be relevant."). Succinctly stated, here the prosecutor may not ask any irrelevant question and then bootstrap herself to impeach credibility because the answer to the question is false.
*361 The second kind of facts which would not be collateral includes "facts which would be independently provable by extrinsic evidence, apart from the contradiction, to impeach or disqualify the witness." McCormick, supra, § 47 at 111. This includes the admissibility of evidence for the purpose of impeaching some specific testimonial quality such as moral conduct, bias, corruption, skill, intoxication or illness, opportunity of observing the events, recollection, narration, and prior inconsistent statements. 3A Wigmore, supra, § 1005 at 966-976. See also Biunno, supra, comments 5 to 12 Evid.R. 20, at 266-283.
"Facts showing misconduct of the witness [for which no conviction has been had] are not within this second kind of facts, but are collateral, and if denied on cross-examination cannot be proved to contradict." McCormick, supra, § 47 at 111. Irrelevant evidence which might improperly affect a witness' credibility may not be admitted into evidence. See Graf v. Folarno, 99 N.J. Super. 173, 177, 239 A.2d 15 (App.Div.), certif. den., 51 N.J. 463, 242 A.2d 12 (1968) (cross-examination of an expert medical witness concerning his writings for "men's magazines" in the field of his expertise were improperly admitted). Also, specific instances of a witness' conduct, relevant only insofar as they may tend to prove a trait of his character, may not be used to affect credibility. Evid.R. 22(d); State v. Mondrosch, 108 N.J. Super. 1, 4, 259 A.2d 725 (App.Div. 1969), certif. den., 55 N.J. 600, 264 A.2d 71 (1970) (proffered evidence as to past actions of a prosecution witness indicating he had previously falsely accused certain persons of committing criminal acts was inadmissible as affecting credibility where the alleged acts of the witness were not subject to conviction of a crime).
Although Evid.R. 20 permits examination of a witness and the introduction of extrinsic evidence relevant upon the issue of credibility, the rule is subject to Rules 22 and 47. To affect credibility of a witness, Evid.R. 22 provides:

*362 (c) evidence of traits of his character other than honesty or veracity or their opposites, shall be inadmissible; d) evidence of specific instances of his conduct, relevant only as tending to prove a trait of his character, shall be inadmissible.
Evid.R. 47 permits proof of a character trait  here defendant falsely stating that he knew nothing about guns and never had a gun  only by
(a) testimony in the form of opinion, (b) evidence of reputation, or (c) evidence of conviction of a crime which tends to prove the trait. Specific instances of conduct not the subject of a conviction of a crime shall be inadmissible. [Emphasis supplied.]
See State v. Hummel, 132 N.J. Super. 412, 334 A.2d 52 (App. Div.), certif. den., 67 N.J. 102, 335 A.2d 54 (1975) (court properly refused to permit defendant charged with carnal abuse to show that the complainants had previously fabricated complaints of serious matters or had previously engaged in misconduct or disorderly conduct); State v. Ryan, 157 N.J. Super. 121, 384 A.2d 570 (App.Div. 1978) (a rape victim could not be cross-examined concerning a specific instance of sexual intercourse in which she had engaged with an unknown man other than defendant the night before the rape); State v. Schlanger, 197 N.J. Super. 548, 551-552, 485 A.2d 354 (Law Div. 1954) (criminal defendant prohibited from cross-examining an accomplice witness of the State as to whether he reported the fruits of their common crime on his income tax returns). See also cases cited in 3A Wigmore, supra, § 1003 at 64 (1989 pocket supplement).
Reversed.
NOTES
[1] At the post-trial motion for a new trial, the judge erroneously stated, "As indicated at the time, the Court ruled that this evidence was relevant and was allowable under Rule 55." From the trial transcript, credibility is the only factor under which the judge admitted the evidence.