**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2097-24

A.T., a minor, by and through P.T.,
parent and natural guardian,

    Plaintiff-Appellant,

v.

ARTHUR MONTGOMERY,

    Defendant,

and

TOLI VURGANOV,[1]

    Defendant-Respondent.

_____

Submitted January 5, 2026 – Decided March 10, 2026

Before Judges Walcott-Henderson and Bergman.

On appeal from the Superior Court of New Jersey, Law Division, Cumberland County, Docket No. L-0853-21.

Chance & McCann, LLC, attorneys for appellant (Matthew Weng, on the brief).

---

[1] Incorrectly pleaded as Toli Vurgonov.

Keller, Lisgar and Williams, LLP, attorneys for respondent (Valerie K. Williams, on the brief).

PER CURIAM

Plaintiff A.T.,[2] through his parent and natural guardian, P.T., appeals from a Law Division order granting summary judgment to defendant Toli Vurganov and dismissing plaintiff's complaint for injuries caused by alleged lead poisoning from A.T.'s exposure to lead during the time he resided at defendant's rental property. After our review of the record and application of the relevant legal principles, we affirm.

I.

Plaintiff resided at defendant's rental property in Millville from approximately 2007 to 2023 when he was a minor. The property was owned and managed by defendants Vurganov and Arthur Montgomery. At the time plaintiff's complaint was filed, Montgomery had passed away.[3] In 2009, while living at the property, plaintiff was diagnosed with lead poisoning after blood tests confirmed elevated blood lead levels. County and state health records

---

[2] We use initials for the minor plaintiff and his parent to protect the minor's privacy interests, which we deem are compelling interests outweighing the Judiciary's commitment to transparency.

[3] No specific information was provided in the record concerning the final disposition of plaintiff's claims against defendant Montgomery.

reflect that lead-based paint and hazardous lead dust were found in the residence during investigations following the diagnosis, and defendant was ordered to abate this condition by public health authorities.

Plaintiff's complaint alleged that as a result of defendants' failure to abate the lead hazards, he suffered permanent physical and developmental injuries, including learning and behavioral issues. Plaintiff originally obtained an entry of default against defendant, but defendant successfully moved to vacate default, and an answer was filed denying liability.

From 2022 through 2024, the matter was in the discovery phase. The initial discovery deadline was extended six times at plaintiff's request. Plaintiff's counsel repeatedly certified persistent difficulty in finding an expert willing to opine on causation and damages related to plaintiff's lead exposure. Each discovery extension was granted to allow plaintiff more time to obtain and provide expert reports, including medical or liability experts, which both parties acknowledged on the record were necessary for plaintiff to sustain his claims at trial. On June 7, 2024, the trial court entered an order extending discovery as well as stating the extension was the "last extension granted for plaintiff to obtain expert reports absent exceptional circumstances," and set August 18, 2024, as the new discovery end date.

3

During this period, plaintiff produced Department of Health and A.T.'s pediatric records showing a history of elevated blood lead levels and subsequent diagnoses of developmental delay and "failure to thrive." However, none of plaintiff's treating physicians rendered a medical opinion within a reasonable degree of medical probability attributing plaintiff's lead poisoning diagnosis and resultant symptoms were caused by conditions at defendant's property.

On December 17, 2024—four months after the final discovery deadline—defendant moved for summary judgment to dismiss plaintiff's complaint, arguing: (1) plaintiff had not produced the necessary expert report establishing causation or damages; (2) none of plaintiff's treating physicians opined that the proximate cause of plaintiff's ongoing deficits was the lead exposure at defendant's property; and (3) any further discovery extension would be improper. Plaintiff opposed the motion and moved to extend discovery by an additional 180 days to obtain a report from a "newly retained" expert. Plaintiff also argued that his treating physicians' testimony based on the medical records, alongside public health documentation of his exposure to lead in defendant's property, were sufficient to prove causation and damages, which precluded the grant of summary judgment.

A-2097-24

At oral argument, the court recounted the numerous discovery extensions, the explicit terms in the June 2024 order prohibiting further discovery extensions and plaintiff's continued failure to produce either an expert report or a treating physician certification linking plaintiff's ongoing health issues to his lead exposure at defendant's property. The court ultimately found that plaintiff failed to establish the necessary elements of his negligence claims concerning causation and damages, stating:

> What are the damages? What are the conditions that he's claiming are caused by this lead poisoning and how has that related, now 17 years later, to his current condition? There is nothing and plaintiff has to establish that . . . when plaintiff files a civil case they know what they have to prove at trial . . . .

The court also found no exceptional circumstances to grant any further discovery end date extensions, stating:

> Plaintiff just didn't do it for whatever reason. I'm not saying that it's easy to do or whatever, but this was a child when this case was filed. This case did not have to be filed until the child turned 20, so why the plaintiff would file the case with the expert on board. Moreover, why plaintiff hasn't secured the expert in the last three years . . . is not explained other than they just haven't done it and fairness requires . . . fairness to both sides. Fairness in this case requires that the motion for summary judgment is to be granted.

A-2097-24

An order was entered granting summary judgment and dismissing plaintiff's complaint with prejudice.

On appeal, plaintiff contends the trial court erred by granting defendant summary judgment because plaintiff's treating physicians should have been permitted to provide an opinion at trial that plaintiff's lead intoxication diagnosis was the result of his exposure to lead at defendant's property, which proximately caused his injuries/adverse conditions, precluding summary judgment.

II.

We review the disposition of a summary judgment motion de novo, applying the same standard used by the trial court. Townsend v. Pierre, 221 N.J. 36, 59 (2015) (citing Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995)). Like the trial court, we view whether "the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Town of Kearny v. Brandt, 214 N.J. 76, 91 (2013) (quoting Brill, 142 N.J. at 540). If "the evidence 'is so one-sided that one party must prevail as a matter of law,'" courts will "not hesitate to grant summary judgment." Brill, 142 N.J. at 540 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)).

6

If there are materially disputed facts, the motion for summary judgment should be denied. Pantano v. N.Y. Shipping Ass'n, 254 N.J. 101, 115 (2023). "'A material fact is one which is really in issue in the case.'" State v. Buckley, 216 N.J. 249, 261 (2013) (quoting State v. Hutchins, 241 N.J. Super. 353, 359 (App. Div. 1990)). Courts must consider if the disputed fact is genuine or of "an insubstantial nature." Brill, 142 N.J. at 529.

In order to prevail on a negligence claim, a plaintiff must establish four elements: duty, breach of that duty, actual and proximate cause, and damages. See Jersey Cent. Power & Light Co. v. Melcar Util. Co., 212 N.J. 576, 594 (2013). Specifically, a plaintiff is required to identify a duty owed and demonstrate defendants' breach of that duty actually and proximately caused injury and damages. Fernandes v. DAR Dev. Corp., 222 N.J. 390, 403-04 (2015) Plaintiff "bears the burden of establishing those elements 'by some competent proof.'" Davis v. Brickman Landscaping Ltd., 219 N.J. 395, 406 (2015) (quoting Overby v. Union Laundry Co., 28 N.J. Super. 100, 104 (App. Div. 1953)).

N.J.R.E. 702 provides: "If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise."

A-2097-24

In some cases, expert testimony becomes "necessary" to the trier of fact's proper functioning where a jury will need to determine areas of specialized knowledge and the party with the burden of establishing a proposition must proffer expert testimony. See Jerista v. Murray, 185 N.J. 175, 188 (2005).

"As fact witnesses, . . . treating doctors may testify about their diagnosis and treatment of a [patient's] disorder, including their determination of that disorder's cause." Stigliano by Stigliano v. Connaught Labs., Inc., 140 N.J. 305, 314 (1995). "Because the determination of the cause of a patient's illness is an essential part of diagnosis and treatment, a treating physician may testify about the cause of a patient's disease or injury." Ibid. Once a patient's injury or disease is "in issue," a treating physician may "testify about the diagnosis and treatment of that injury or disease." Ibid.

A treating healthcare provider may testify as a fact witness about any subject relevant to the patient's evaluation and treatment if the testimony is within the provider's personal knowledge and the information that forms the basis of the testimony is obtained from the patient during the treatment pursuant to Rule 701. The offering party must provide notice to the opposing party and comply with discovery requests. Delvecchio v. Twp. of Bridgewater, 224 N.J. 559, 577-80 (2016) (citing Stigliano, 140 N.J. at 314). There is "'no reason to

distinguish the doctor['s] testimony as to causation and [the doctor's] testimony as to diagnoses and prognoses' because '[a]ll arise out of and are inextricably linked to [the plaintiff]'s treatment.'" Carchidi v. Iavicoli, 412 N.J. Super. 374, 381-82 (App. Div. 2010) (third and fourth alterations in original) (quoting Stigliano, N.J. Super. at 379). However, a treating healthcare provider "is limited to issues relevant to the diagnosis and treatment of [their] patient[,]" unless retained and designated as an expert witness. Delvecchio, 224 N.J. at 579.

The record demonstrates plaintiff failed to comply with the legal principles set forth in the aforementioned cases concerning proof of causation. As pointed out by defendant, the record demonstrates that plaintiff's expert never provided an opinion on medical causation during the course of plaintiff's treatment unlike the experts in Delvecchio and Stigliano. Nor did plaintiff's treating physician provide deposition testimony about the probable cause of the adverse conditions unlike the scenario in Parker v. Poole, 440 N.J. Super. 7 (App. Div. 2015) relied on by plaintiff.

We note the record supports plaintiff's contentions that governmental authorities investigated the property in 2009, determined lead was present and found plaintiff to have lead intoxication at that time. Nonetheless, plaintiff fails

to point to any evidence, including the medical records or other records, wherein his treating physician opines the lead intoxication was caused by his exposure to lead at defendant's property and the present injuries/adverse effects he complains of were proximately caused by the plaintiff's lead exposure. We therefore conclude the failure of plaintiff to provide an opinion regarding causation was fatal to his claims and the trial court did not err in granting defendant summary judgment.

Plaintiff's Notice of Appeal, as clarified through his Case Information Statement, also contended the trial court erred in denying plaintiff's motion to extend discovery, but plaintiff's merits brief failed to address this issue. Arguments not raised in the briefs are deemed waived. R. 2:6-2(a)(6); see Gormley v. Wood-El, 218 N.J. 72, 95 n. 8 (2014) (holding an issue that is not briefed is deemed waived upon appeal); Pressler & Verniero, Current N.J. Court Rules, cmt. 5 on R. 2:6-2. Therefore, we dismiss this issue as waived.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-2097-24